Dear Mayor Beckwith:
You have requested an opinion of this office relative to the authority of the elected Police Chief of the City of Tallulah to enter into an emergency patient care agreement with a for-profit senior care center that includes the use of a municipal facility by the senior care center in the event of a declared disaster.
You also note that a similar situation was addressed in Atty. Gen. Op. 09-0288. In that opinion, you were principally concerned about unauthorized access to the municipal community center and equipment. You strongly objected to certain city council members wanting keys to the municipal community center and also having the council adopt an ordinance granting keys to those individuals and groups which lease the community center for events.
As was noted in that opinion, the City of Tallulah is a Lawrason Act municipality, governed by the provisions of La.R.S. 33:321, et seq. The Lawrason Act designates the mayor as "the chief executive officer of the municipality." See La.R.S. 33:362(B). The mayor's powers, duties and responsibilities are set forth in La.R.S. 33:404(A)(1), which has been interpreted by a state appellate court to mean that "the mayor, as chief executive officer, is intended to have the day-to-day charge of administering municipal government."[1] *Page 2 
That opinion concluded by noting that you, as mayor, have the authority to decide which persons or groups may be given keys to the community center and all other municipal buildings, and in doing so you may legally withhold the issuance of keys to city councilmen. Also, the office opined that an ordinance adopted contrary to your decision regarding the distribution of keys to municipal buildings would infringe upon an administrative area reserved to you as mayor, and would be invalid under La.R.S. 33:404(A)(1).
The underlying issue in this instant opinion request differs in that it also involves the chief of police's authority to bind the municipality to an agreement with a for-profit entity intending to use the community center during a declared disaster. The Olive Branch Senior Care Center ("Olive Branch") is a large, for-profit, nursing home with 156 beds based in Tallulah, LA. As such, it must comply with various state laws and regulations promulgated by the Department of Health and Hospitals ("DHH"). Under DHH Regulations, every nursing facility is required to have an emergency plan that conforms to the Louisiana Model Nursing Home Emergency Plan[2] developed by the Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP"), which, in turn, requires that a facility's plan conform to the current Nursing Facility Minimum Licensing Standards for Emergency Preparedness. See LAC48:1.9729. The facility must work in concert with the Local/ Parish Office of Homeland Security and Emergency Preparedness, OHSEP, to complete the Louisiana Model Nursing Home Emergency Plan.Id.
This required plan is exhaustive and requires that facilities such as Olive Branch confect an evacuation plan and enlist the services of a shelter that would meet the needs of its patients in the event of a disaster. The plan not only must meet the standards set forth in the Louisiana Model Nursing Home Emergency Plan, but the owner of the Olive Branch must also submit the plan to the appropriate authorities.
Even if Olive Branch should decide that the Tallulah Community Center is appropriate for use as an emergency shelter and that evacuation to the shelter is feasible during a declared disaster, the owner of Olive Branch must enter into an agreement with the chief executive officer of the municipality, which would be the mayor. See La.R.S. 33:404(A)(4). *Page 3 
Louisiana law further provides for specific governance during a declared disaster depending on the location of the disaster. La.R.S. 29:721, et seq., (The Louisiana Homeland Security and Emergency Assistance and Disaster Act, "LHSEAD") authorizes the governor, parish president, and/or mayor to declare a disaster for their particular jurisdiction and then describes the responsibilities for the mayor under those circumstances. See,La.R.S. 29:737. Specifically, when a mayor declares a local disaster or emergency within such subdivision the mayor shall carry out the provisions of LHSEAD.[3]
In conclusion, there is no authority in the Lawrason Act, or within the LHSEAD, to allow the elected police chief to enter into an agreement authorizing the use of a municipal facility during an emergency. That authority lies strictly with the mayor or chief executive officer, responsible for day to day administration of municipal property.
We trust this satisfactorily answers your questions. Please feel free to contact our office should you have any additional concerns.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By:________________ WILLIAM P. BRYAN, III Assistant Attorney-General
 JDC/WFB, III/jv
[1] In re Dismissal ofJordan, 25,375 (La. App. 2 Cir. 1/19/94), 631 So.2d 57
[2] http://gohsep.la.gov/plans/08NursingHmModelEPPIan.doc
[3] La.R.S. 29:737 (D)